BROWN v. McKINNEY et ux. (No. 907.) *

(Court of Civil Appeals of Texas. El Paso. Jan. 16, 1919. Rehearing Denied Feb. 6, 1919.)

1. DEEDS ⬤163 — FORFEITURE — DEFENSE — USELESS ACT.

Where plaintiffs conveyed lots to defendant in consideration of certain cash and the construction of a business building on the lots, the deed granting use of an alley over plaintiffs' land and providing that the title to the premises should revert if building were not constructed, and defendant refused to construct the building because he had subsequently bought other property, plaintiffs were not precluded from recovering the premises because they had not opened the alley, since this would have been useless under the circumstances.

2. DEEDS ⬤166—FORFEITURE—WAIVER.

Mere indulgence does not operate as a waiver of grantor's right to claim and enforce a forfeiture for grantee's failure to construct a building upon premises conveyed within time agreed, where no intervening equity has arisen.

3. EVIDENCE ⬤590—INTERESTED WITNESS.

Ordinarily it is improper for the court to assume as a fact a matter proven only by the uncorroborated testimony of an interested witness.

4. TRIAL ⬤170—PEREMPTORY INSTRUCTIONS —UNCORROBORATED EVIDENCE.

Where matters were proven by the uncorroborated testimony of plaintiff, and defendant, with full knowledge thereof, was present in court, but did not dispute such testimony by any evidence, it was not error to give a peremptory instruction for plaintiff.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Suit by C. M. McKinney and wife against Edgar D. Brown. Judgment for plaintiffs, and defendant appeals. Affirmed.

Jno. L. Dyer and J. F. Woodson, both of El Paso, for appellant.

Ware & Norcop, C. H. Kirkland, and C. W. Croom, all of El Paso, for appellees.

HIGGINS, J. By deed dated February 6, 1914, McKinney and wife conveyed to appellant lots 6, 7, and 8 in block 6 in the town of Clint, El Paso county. By the deed a right of way was also granted over a strip of land 10 feet wide across lots 1 to 5, inclusive, in said block. This right of way extended from a street to the rear of lots 6, 7, and 8. The deed recites that it was in consideration of $1 and other valuable considerations paid and secured to be paid. The deed contains this further provision:

"The said Edgar D. Brown, as a part of the consideration for the purchase price of the property hereby conveyed, does hereby agree and obligate and bind himself to begin the construction of a business building on the property hereby conveyed at a period of time not later than the 1st day of July, 1914, and after said alley is opened as aforesaid, and after said construction of said building has begun, he will use reasonable diligence to complete the same, and that same will be completed by him within a reasonable and practical time thereafter; and should the said Edgar D. Brown fail or neglect to begin the construction of said building and complete the same within a reasonable time, as aforesaid, then it is expressly agreed and understood that the title to the above-described property will revert to the grantors herein, and title to said property thereupon will become vested in the said grantors as in their first and former estate."

The alley mentioned in the foregoing quotation refers to the aforesaid 10-foot right of way.

Brown never began the construction of the building on the property, and on May 14, 1917, appellees sued to recover the premises. The case was tried before a jury on February 4, 1918, and a peremptory instruction was given in favor of appellees. Verdict was returned and judgment rendered in accordance with the instruction.

Upon trial the deed was offered in evidence, and plaintiff C. M. McKinney testified: That the building referred to in the deed was never begun. He had a conversation with Brown, the defendant, in reference to starting the building. That after Mr. Brown made the deal for other property he came to witness and asked what he was going to do in the matter, and witness told him he did not know; he supposed he would have to require him to live up to the contract. This was very soon after the purchase of the property, but he was unable to say whether it was before or after July 1, 1914, but he knew it was after the deal had been closed for the other piece of property. The other property referred to is a store now occupied by Brown. Brown told him he would not put up the building; that property in Clint had depreciated, and he thought he had paid enough for it. He gave as his reason for not constructing the building that he had purchased the other property and was not able to put up another building; that the real consideration for the execution of the deed was the erection of the building. He had refused to sell the lots for a money consideration. He wanted a building on the property. The store building that Brown was to build and

---

the money paid was the consideration for the deed. That it was advantageous to him to have the building constructed. That was his main idea in selling the lots. The construction of the building was valuable to him because he owned the property adjacent to the premises conveyed, the same being about 20 acres. There were two general merchandise stores in the town of Clint and some smaller places—the Edgar D. Brown and Clint Mercantile Company Stores. The Mercantile Company store was just across the street from the property, and Mr. Brown's store about 200 yards east. Between the stores there was a row of small buildings occupied by a drug store, a barber shop, a little cash grocery and the post office. If Mr. Brown had moved his business onto the lots sold him, it would have changed the business center of the town. It would have been of great advantage to witness' property and would have enhanced the value thereof. Mr. Brown was conducting a general merchandise store, renting from J. J. Schairer. He was to build a store on the property conveyed, but did not do it, because he purchased the Schairer property. Brown also ran a banking business. If he had moved upon the property conveyed, he would have made that the principal business district of the town. The building that was to be placed on the property was to be occupied by Brown and used for a general store and banking business. The second time that Brown spoke to him about the matter of refusing to move, he said his attorney had told him, on account of the alley not being opened, witness could not collect anything and could not get back anything. Witness could not say whether this conversation was before or after July 1st. They were talking about settlement and trying to settle, and Brown turned it off by saying:

"Well, my attorney advises me on account of that alley not being opened, that I could not collect anything."

Witness had not opened the alley because nothing had been done towards the building. The alley could have been opened at any time. There was a hay shed over the alley with no sides to it. The alley ran through this shed, and there were two wire gates on each end of the shed. The gates were just wires at each end of the shed—just enough to keep stock in. Brown made a thousand or two adobes there on the ground, and then hauled them away after he had purchased the other property. He hauled them down to the other property to make some improvements. Brown spoke about having some plans for a building. He never said anything about the alley being open. He never gave notice that he wanted him to clear the alley or open same. The shed remained until October, 1917. Witness removed it the latter part of October or the first of November, 1917. Brown never mentioned that he desired the alley or anything be done to it until the conversation came up in which he referred to what his attorney had told him. Witness was ready at any time to clear the alley up. He agreed with Brown at the time he bought the lots that he would clear the alley. He agreed to take the building down. He did not tear it down, because there was no occasion to tear it down. He agreed to tear it down at any time, and it could have been torn down in a day. He would pay the bill at any time, or Mr. Brown could take it down himself. He told Brown he would tear out that building. "I told him at the time we made the agreement I would tear it down."

The testimony of McKinney is quite lengthy, but we deem it unnecessary to further detail same, as the foregoing is all that is material to a consideration of the appeal. In this connection, however, it should be stated that the testimony of McKinney shows that, instead of a cash consideration of $1, as recited in the deed, there was in fact a cash consideration of $1,000 paid by Brown. The judgment discloses that Brown was present upon the trial, but he did not testify, and offered no evidence whatever in defense of the suit, except to read in evidence the plaintiff's original petition in the case filed May 14, 1917, which is in the ordinary form of an action in trespass to try title for lots 6, 7, and 8.

[1] Appellant presents the proposition that one who is himself in default in the performance of his contract cannot forfeit under the terms thereof, and since McKinney admits he had not opened the alley, he could not recover, because Brown was under no obligation to begin the building until the alley was opened.

The testimony of McKinney plainly showed that Brown's refusal to begin and construct the building was because he subsequently bought other property for the location of his business and because his attorney had advised him that he did not have to comply with the provision in the deed which required him to build on account of the alley not having been opened. It is plainly apparent from McKinney's testimony that it would have been vain and useless for him to have torn down the shed and removed the flimsy gates obstructing the alley, for, if he had done so, it would not have induced Brown to comply with his contract. The law does not require the performance of a useless act in order that one may insist upon his rights. Brown had other reasons for his failure to build, and the opening of the alley would have been wholly useless and an unnecessary expense.

[2] Nor do we think there is any merit in the contention that appellee has waived his right to recover by failing to promptly claim and enforce the forfeiture. Mere indulgence

does not operate as a waiver. The indulgence extended has not in any wise operated to the detriment of Brown, and no intervening equity of any kind has arisen. The cases relied upon by appellant upon this phase of the case show an intervening equity of some kind or detriment arising out of the indulgence. There is nothing in this record to show that Brown was in any wise led to believe that McKinney had waived his rights.

The second proposition under the second assignment is:

"Where a specified time is fixed by contract for the doing of an act, and the doing of an act within a fixed time is prevented by the other party, or is waived, then a reasonable time thereafter is allowed for the doing of that act, and what is a reasonable time is for the jury to determine."

Replying to this, it is sufficient to say that under the evidence, there was no waiver nor is there any evidence to show that McKinney prevented Brown from performing his agreement. Furthermore, in the absence of any explanation from Brown, the court was authorized in assuming as a matter of law that he had unreasonably delayed in the performance of his agreement.

In view of this record, it seems plain that the agreement to build upon the property was a material part of the consideration for the conveyance; that Brown has breached that agreement, and to permit him to hold the property would deprive McKinney of the same without paying the agreed consideration. The law does not look with favor upon efforts to hold property in this manner.

[3] There is only one other question to which we need advert. This is the contention that the court should not have given the peremptory instruction because the facts upon which it is based were proven only by the testimony of plaintiff McKinney. Ordinarily, it is improper for the court to assume as a fact a matter proven only by the uncorroborated testimony of an interested witness. Thomas v. Saunders, 150 S. W. 769. But this rule is not of such absolute and universal application as in all instances of its violation to require reversal. Bank v. Friar, 167 S. W. 261.

[4] The record shows that Brown appeared at the trial in his proper person. If there was any untruth in the testimony of McKinney, he could have readily disputed it. His failure to comply with his contract certainly called for some explanation upon his part. He sat silent and did not contradict one word of McKinney's testimony. Under the circumstances, there was no error upon the part of the court in assuming as sufficiently proven the facts testified to by McKinney, and the peremptory instruction was properly given. City of San Antonio v. Rollins,

127 S. W. 1166; Railway Co. v. Stone, 58 Tex. Civ. App. 480, 125 S. W. 587; Hansen v. Williams, 113 S. W. 312.

Affirmed.

