**WATSON v. ROCHE et al.**

No. 2873.

Court of Civil Appeals of Texas.  Waco.

Nov. 3, 1949.

———◆———

Tyson, Dawson & Dawson, Corsicana, Bennett & Bennett, Normangee, Seale & Seale, Centerville, for appellant.

Black & Stayton, Austin, J. H. Adkisson, Centerville, Sam Bain, Centerville, E. A. Camp, Rockdale, for appellees.

LESTER, Chief Justice.

Suit by the appellant against David T. Roche et al. for the cancellation of an oil and gas lease executed by the appellant to David T. Roche covering certain tracts of land situated in Leon County, alleging that said lease was materially altered after its execution and delivery; that said alteration was made by removing the original pages of description attached to the lease and substituting therefor a single page which described four additional tracts, and not including two tracts that the original contained.

Appellant, on February 23, 1948, executed to said Roche an oil and gas lease which was intended to include her home place and some other tracts adjacent thereto, consisting of approximately 595.65 acres, at the rate of $1 per acre. A few days later she executed an oil and gas lease to Mr. H. H. Coffield to something over 1,100 acres, at the rate of $5 per acre. It was the intention of the appellant and Mr. Coffield that his lease should cover the property known as the "bottom land", situated on and near the Navasota River. A short time after the Coffield lease was executed he discovered that tracts Nos. 3, 4, 5 and 6,

consisting of 100, 20⅓, 80 and 50 acres, respectively, and described in his lease, were also described in the lease to Roche as recorded in the County Clerk's office of Leon County. He communicated this information to appellant's sons, who were looking after appellant's business. They went to the Clerk's office and found that this was true, and further found that the lease as recorded did not contain a 116 acre tract and a 140 acre tract which the appellant intended to lease to Roche. Appellant, upon being informed of these facts, instituted suit for the cancellation of the lease to Roche on the ground of mutual mistake, alleging that some thirteen days prior to February 23rd the appellee Lanier approached her two sons and offered to buy an oil and gas lease from the appellant on the home place and lands adjacent thereto, approximating some 595.65 acres, at the rate of $1 per acre; that she accepted his proposition; that appellee Lanier agreed that he would procure a description of the lands to be leased, and thereafter delivered a memorandum of description of the lands, wherein it referred to certain deeds and deed records of Leon County for description; that on the 23rd day of February, 1948, the appellee Smith took the memorandum calling for the description of certain lands and attached the same, or had the same attached, to a lease whereby appellant was to lease to said Roche the lands and premises that had been verbally agreed upon by the appellant and Lanier; that appellee Smith presented a lease with the memorandum mentioned aforesaid attached to it and becoming a part of the lease, and then and there told appellant that said memorandum and lease described the land which had theretofore been agreed upon by the appellant and Lanier to be leased; that appellant, relying upon the promises of Lanier to procure a proper description of the lands comprising her homestead and some 395.65 acres adjacent thereto and upon the representation of the said Smith that said lease did contain a description of her home place and some 395.65 acres adjacent thereto, she executed a lease dated February 23, 1948, to said David T. Roche; that the said Lanier made a mistake in pro-

curing a description of the land which appellant agreed to sell and which Lanier agreed to buy, in that he omitted a 116 acre tract and a 140 acre tract, and the said Lanier further erred and made a mistake in procuring a description of tracts Nos. 3, 4, 5 and 6 as set out in the lease to said Roche; that the appellee Smith, having been given a memorandum prepared by Lanier and believing that the same was a description of the land which appellant had agreed to lease and Lanier to buy, attached the aforesaid memorandum to a lease and stated to appellant that same was a description of the land which appellant was leasing to Roche; that appellant, relying upon the statement and promises of Lanier that he would procure a proper description of the land which she was to lease to Roche, and relying upon the statement of the appellee Smith that the lease described the land which she had agreed to lease to Lanier, she executed and delivered the lease dated February 23, 1948, to said Roche, believing said lease contained a description of her home place and some 395.65 acres adjacent thereto, and none other; that at said time she was unable to discover the error that had been committed for the reason the memorandum did not give the field-notes of the land but referred to certain deeds and deed records for a description; that said memorandum and lease contained tracts Nos. 1, 2 and 7 as set out in the lease dated February 23, 1948, and that said tracts were part of the land that she had agreed to lease, but she did not agree to lease and the appellee did not agree to buy tracts Nos. 3, 4, 5 and 6 as set out in said lease.

Appellees filed their answer to said petition, admitting the mistake, and prayed that the instrument be reformed so as to reflect the true intention of the parties.

Appellant then filed an amended petition, which did not contain the allegations of mistake, but for the first time pleaded material alteration.

The evidence reveals that the appellant's two sons were helping her to attend to her business affairs and that she looked to them for advice. The two sons testified that Lanier, who was representing Roche,

was to procure the description of the five tracts which appellee had agreed to lease; that in a few days he mailed to one of the brothers several pages of description, which each of them read several times; that the descriptions mailed described the lands by fieldnotes and not just by reference to the tracts and deeds and the book and page where the instruments had been placed upon record. One of the sons testified that in a few days the appellee Smith came from Austin for the purpose of having the lease executed; that he and Smith went to Normangee to see an attorney suggested by the son to have him to prepare the lease; that Smith delivered to the attorney the description of the land that Lanier had mailed, which he had, before leaving for Normangee, turned over to Smith; that he saw the attorney put the description of the five tracts that had been agreed upon in the lease; that there were three or more pages on which the various tracts were described, and that the attorney placed the pages to the lease-form one over the other so that when the first page was read it could be turned up and the second page could be read; that the next page and the other pages were placed in like manner; that he attached the pages to the lease up near the top of the blank space in the printed lease-form that was left for the purpose of describing the property to be leased; that he didn't know whether the attorney stapled, glued, or stapled and glued the pages to the lease, but he did know that the attorney attached the pages to the lease at the place above indicated.

Appellees' Exhibit No. 2 is a lease-form similar to the one in question, with two blank pages, one over the other, attached to the lease-form near the top of the space left blank for the description to be inserted, and this son testified in respect thereto as follows:

"Q. You say there were several pages of description there A. Yes, sir.

"Q. (Here a lease-form is marked 'Defendants' Exhibit 2' by the Reporter for identification) Will ask you take that, please, sir. (The exhibit is handed to witness). Was the paper attached to the lease-form that you say Mr. Bennett attached to the lease-form in his office, was it something like this? A. Yes, sir, it looked something like this one.

"Q. Was it longer than that or shorter, or did it look to be about that length? A. It looked to be a little longer, as well as I remember.

"Q. I see. You think there was more than two pages or sheets; you think there was more than two? A. I know there was more than two.

"Q. Was it fixed so you could turn one sheet back, and it was stuck on below, so you could read it? A. Yes, sir.

"Q. And turn over, and if a third sheet was on there, you could turn and read that? A. Yes, sir.

"Q. A third sheet was stuck on there, but you do not know how? A. Yes, sir.

"Q. You don't know how, but you know the second sheet was stuck on below the first sheet and you don't know how it was stuck? A. No, sir.

"Q. Whatever or how that was stuck on, it was stuck on it somewhat like the arrangement shown on 'Defendants' Exhibit 2', except there were more of them? A. Yes, sir."

There are two small holes below the middle of the lease where the certificate of the County Clerk is attached. The certificate now is attached by only one staple but the lease and certificate clearly show at one time it was attached to the lease by two staples and the holes in the certificate and in the lease are in position to show that the missing staple made both holes. There are some very small holes at the bottom of the lease and the son testified in respect to these holes as follows:

"Q. Now, Mr. Watson, I want to hand you the oil and gas lease offered in evidence by plaintiff. This is the oil and gas lease offered in evidence and marked 'Plaintiff's Exhibit 1'. Take a look at that, Mr. Watson. (Witness examines the lease.) Will ask you to point out to me, if you can, any indication there was anything ever pasted to or glued to and attached to that page other than that one page attached thereto now. See if you can find any holes or any glue left by taking some

description off. In other words, tell me anything you can to indicate that lease has been tampered with. A. I do not see anything.

· "Q. You do not see any glue-mark down under this description? A. No, sir.

"Q. You do not see any brad marks down there, where some other instrument has been attached? A. No, sir.

"Q. In fact, you cannot take this oil and gas lease here and point out to this jury a single thing about it, about any glue or holes on it, or anything about it, to show it has been changed? A. No.

"Q. Now, Mr. Watson, I see two little holes down here at the bottom of this lease, on the lefthand side. See those? A. Yes, sir.

"Q. Those are holes you said might have been where some fieldnote description was attached and taken off. Is that your explanation? A. Yes, and those two up here.

"Q. We will talk about these first. Is it your testimony to this jury there was one page of field notes stuck on this, away down here at the bottom? A. No, it was not stuck down there."

Appellee Smith testified positively that the description was stapled and glued to the lease as it is now stapled and glued.

■ There is no rule more firmly established than the one that where the evidence is such that reasonable minds might draw different conclusions, the facts should be passed upon by the jury in cases being tried before a jury; but it is also a rule that where the evidence does not raise more than a scintilla of evidence, it is not sufficient to carry the case to the jury. Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059; Texas & P. Ry. Co. v. Ball, 96 Tex. 622, 75` S.W. 4.

Following the description now attached to the lease is a clause: "The total number of acres in all the above tracts estimated to comprise 595.65 acres more or less", and the body of the lease, which no one contends was in any way changed, provided for the payment of a yearly rental of $595.65, which would be the correct amount at the rate of $1.00 per acre as agreed upon; and by adding the total acreage as now described in the lease, the several tracts amount to 596.65 acres, a discrepancy of only one acre, but adding the total number of acres as appellant contends were described in the lease as prepared and executed, they add up to 602.31, a discrepancy of 6.66 acres. It hardly seems plausible that if the lease contained the description as contended by the appellant, that the attorney would have arrived at the total acreage to be leased as 595.65 acres, for the amount of the acreage stated in the lease-form to be covered by the lease so closely coincides with the amount of the acreage described in the typewritten page now attached to the lease-form but does not coincide with the amount of acreage that would have been described if the type-written page of description referred to by the sons had been attached.

■ The lease is before us as an original exhibit introduced in evidence by the appellant for the limited purpose of cancellation and by the appellees for all purposes. It shows no signs of being altered in the manner contended by the appellant. If the lease as originally prepared with the description of several pages and the pages attached to the lease-form in the position and in the manner as testified to by appellant's son, and were stapled and glued to the form and had been removed and a page substituted therefor, there would be some physical evidence upon the lease-form of such removal; but there is nothing to indicate that same was done, that the staples were removed, and there is no evidence of removal of pages that had been previously glued to the form. We are assuming that the description was stapled and glued to the form. Appellant's son testified that the description was attached to the lease-form in the position that the description is now attached. He did not know whether the pages were stapled or glued, or stapled and glued. Appellee Smith testified positively that the description was stapled and glued to the form. It is the general rule that the testimony of an interested party only creates an issue of fact, but there are exceptions to the rule, and one

of their is that the positive, uncontradicted testimony of an interested party does not create an issue of fact when the opposite party is in position to contradict or discredit such testimony and fails to do so; then such interested party's testimony is taken as true. Century Insurance Co., Limited, of Edinburgh, Scotland v. Hogan, Tex.Civ.App., 135 S.W.2d 224; Brown v. McKinney, Tex.Civ.App., 208 S.W. 565 (writ ref.); Wells v. Smith, Tex.Civ.App., 144 S.W.2d 430; England v. Pitts, Tex.Civ.App., 56 S.W.2d 493 (writ dis.). The attorney who prepared the lease is one of the attorneys representing the appellant. He participated in the trial of the case. He is the one who attached the description to the lease and is presumed to know in what manner he did so. If he did not staple and glue the description to the lease-form, he could have so testified, but not having so testified, under the above authorities, his testimony must be taken as establishing the fact that the description was stapled and glued to the form by the attorney who prepared the lease.

■ Viewing the testimony in its most favorable light to the appellant, we have reached the conclusion that the alteration as contended by her is against the physical facts and that it did not raise an issue of fact to be submitted to the jury.

■ Another reason why the appellant is not entitled to have the lease cancelled is that the lease introduced in evidence contained two certificates of acknowledgment, the first dated February 23, 1948, and the other dated April 22, 1948. The second one was dated long after the appellant learned that the lease as recorded did not describe the two tracts of land that were agreed to be leased, and that it did describe four tracts that were not agreed to be leased. This second acknowledgment was not attacked by pleading or evidence. Breitling v. Chester, 88 Tex. 586, 32 S.W. 527.

■ The court also instructed a verdict for the appellees on their cross-action for reformation. As heretofore stated, the appellant leased to Coffield five of the tracts, consisting of 250 acres, that are now described in the Roche lease. Under the terms of appellees' lease she was to receive $1.00 per acre, and under the Coffield lease she received $5.00 per acre. We cannot see how she was injured thereby, but under the evidence the trial court had no other alternative except to instruct a verdict against her on her cause of action for cancellation; and the evidence showing without dispute that it was not the intention of the parties to lease tracts 3, 4, 5 and 6 but that they intended that the lease should cover tracts 1, 2 and 7 now described in the lease and the two additional tracts of 116 an 140 acres, respectively, that were not included but which they understood were included at the time the lease was executed, we are of the opinion that as a matter of law the evidence shows that tracts Nos. 3, 4, 5 and 6 were placed in the lease and that the two tracts of 116 and 140 acres were omitted through a mutual mistake of the parties.

Finding no reversible error, the judgment of the trial court is affirmed.