**BAYOU DRILLING CO. OF TEXAS, Inc., et al., Appellants,**

v.

**George BAILLIO, Appellee.**

**No. 13067.**

Court of Civil Appeals of Texas.

Houston.

Jan. 23, 1958.

Rehearing Denied April 24, 1958.

Second Motion for Rehearing Denied May 15, 1958.

William H. Scott, Houston, for appellants.

Andrews, Kurth, Campbell & Bradley, Richard F. Burns, and Robert L. Bradley, Houston, for appellee.

BELL, Chief Justice.

The appellee, George Baillio, sued Bayou Drilling Company of Texas, Inc. on its promissory note of $35,000, alleging there was a principal balance of $31,000 due thereon. He also sought foreclosure of his chattel mortgage on numerous items of personal property, the chattel mortgage having been executed by the corporation. He joined as a defendant Empress Oil Company, alleging it had guaranteed payment of the note. Martin L. Harris filed a petition in intervention, alleging that he, and not Bayou Drilling Company, was the owner of the property covered by the chattel mortgage. Also, Harris alleged that Baillio was an officer and director of Bayou Drilling Company and could not deal with it and, therefore, the note and mortgage were invalid.

Further, Harris alleged that $10,000 of the $35,000 alleged to have been loaned to Bayou Drilling Company was actually used by Baillio to subscribe to stock in Bayou Drilling Company and that, therefore, the most that was owed on the principal of the note was a balance of $21,000. Admittedly $4,000 had been paid on the note.

Empress Oil Company pled ultra vires. Bayou Drilling Company merely filed a general denial.

Appellee answered the intervenor that he (intervenor) was estopped to deny that he had conveyed the property to the corporation because he had induced appellee to loan the corporation $35,000 by representing that he would transfer said property, and that intervenor actually personally had the chattel mortgage prepared and delivered it to appellee.

Trial was before a jury, and, at the conclusion of the testimony, the court, on proper motion, withdrew the case from the jury and rendered judgment for appellee as against each of appellants.

The evidence in the case consisted solely of the testimony of appellee and some small amount of documentary evidence. Harris did not testify, though the statement of facts shows he was present at the trial.

The only witness who testified was the appellee, George Baillio. This is the substance of his testimony:

In the spring of 1952 Martin Harris came to him at his office in Lake Charles, Louisiana, and wanted to borrow $35,000. As security he offered a chattel mortgage on some equipment. Harris, whom Baillio had known before, stated he had contracted a well and there was a lease and over-

riding royalty on 40 or 50 acres and Harris would split this 50-50. Appellee turned this proposition down because he did not want to get in the oil business. In May of 1952, Harris returned and after some negotiation between him and appellee, an agreement was drawn up in the form of a letter from appellee to Harris. Harris signed his acceptance on the letter. This written agreement, which was introduced in evidence, provided that the Bayou Drilling Company should be formed as a Texas corporation with an authorized capital stock of $10,000, $5,000 being paid in. In order to get the corporation started,. appellee was to loan the corporation $35,000. This loan was to be secured by a chattel mortgage on the equipment listed in an inventory furnished by Harris and this equipment was to be placed in the corporation by Harris. As additional security the note was to be endorsed by Empress Oil Company and there was to be an assignment of oil runs belonging to Empress Oil Company. Too, 9,998 shares of Bayou Drilling Company stock were to be issued in appellee's name, and these were to be held as security until the note was paid, at which time 2,500 shares were to be retained by appellee as owner and the balance transferred to Harris or his designee. There was an agreement to employ Harris as manager at $200 per month. The Drilling Company was to enter into drilling contracts for cash and mineral interests. The appellee and Harris were to own such, equally. To the letter was attached an inventory of the personal property. This is the same property which is covered by the chattel mortgage. The letter was dated May 26, 1952. On this date appellee issued three checks, two being for $5,000 each, payable to Bayou Drilling Company, and one being for $4,500 payable to Wilson Supply Company. On June 21 a check for $10,000 was given the Drilling Company, and on July 30 another one for $10,500 was given the Drilling Company.

On May 26, the application for a charter was drawn up. It was filed with and approved by the Secretary of State on May 28. The directors for the first year were appellee, J. J. Paul, and John A. Croom. The latter was attorney for Martin Harris who prepared the application for the charter. The affidavit to the charter application recited that the stock in the amount of $10,000 had been fully subscribed to and paid for by cash. Appellee testified this was done because Mr. Croom told him this would be a quicker way to handle the incorporation than listing the property as the medium of payment. He also testified that Harris was to transfer the equipment covered by the chattel mortgage in payment for the capital stock.

On June 20 the Board of Directors met, at which meeting all directors were present, and a motion was passed authorizing the vice president, I. K. Crosby, Jr., and Secretary John A. Croom to execute a note to appellee for $35,000, this amount representing $10,000 which had been advanced by appellee and $25,000 to be borrowed as needed. Too, the motion authorized the execution of a chattel mortgage on the physical assets of the corporation. Present at such meeting in addition to the directors was Martin Harris. The directors authorized his employment as manager, at $200 per month.

On June 20 a note for $55,000 was actually executed because Mr. Harris told appellee the corporation might need more than $35,000, and this note could also cover such additional amounts, up to $55,000.

Appellee testified unequivocally that he was not to be a subscriber to stock in the corporation, but he was to get 2,500 shares as a part of the consideration for making the loan. Just as emphatically and clearly, he testified that the only reason the corporate charter showed payment for the stock in cash was because Mr. Croom, Mr. Harris' attorney, said this was the quickest way to handle it, but that in fact the stock was to be paid for by Martin Harris through the transfer of the equipment of Harris. The stock, except for the 2,500 shares to be

kept by appellee, belonged to Harris and was issued in appellee's name and held by him only as security for the loan of $35,000.

Appellee, at the insistence of Harris, was president of the company, but Harris in fact ran, and had complete charge of, the company. Harris had the note and chattel mortgage prepared and delivered them to appellee. It was to Harris that appellee delivered the various checks. Appellee testified he was induced to make the loan on Harris' representation that he would transfer the equipment covered by the chattel mortgage. No bill of sale had ever been executed by Harris conveying the equipment to the corporation, nor had it ever been set up on the books of the corporation. However, J. J. Paul was Harris' bookkeeper and the business was actually run by Harris. Harris alleged the equipment had always been in his possession, but he also alleged in his petition in intervention that the equipment was used in drilling by Bayou Drilling Company. He, by pleading, sought compensation for use of the equipment, but he made no effort to make proof.

At the conclusion of the evidence, appellants having only introduced the charter of Empress Oil Company, each party made a motion for an instructed verdict. The court denied the motions of appellants and while not instructing a verdict for appellee, he did the equivalent and withdrew the case from the jury and rendered judgment for appellee against all appellants.

We might observe the very relevant fact that the testimony of appellee was direct, clear, positive, free from contradictions, inconsistencies, and circumstances tending to cast suspicion on it.

■ Appellants contend that since the only testimony in the case came from appellee, the plaintiff in the case, the court could not properly withdraw the case from the jury and render judgment for appellee. With this contention, in the light of the record in this case, we cannot agree.

The general rule undoubtedly is that if the sole evidence consists of the uncorroborated testimony of a party to the suit and its validity to establish material facts therefore rests solely on the credibility of such party, an issue is presented for the jury because the jury must pass upon the credibility of such a vitally interested witness. Pope v. Beauchamp, 110 Tex. 271, 219 S.W. 447. However, we have no such case here. While appellee was the only witness who gave oral testimony, his testimony is corroborated by documentary evidence and the silence of Martin Harris and John Croom, both of whom were present at the trial of the case and both of whom were shown to have personal knowledge of all of the material facts. Appellee's testimony is entirely consistent with the letter of May 26, 1952, which John Croom, attorney for Martin Harris, prepared and which Martin Harris signed. It is true that the corporation was not formed in the exact manner stated in the letter, but appellee testified the manner was altered because Mr. Croom stated there were some rush contracts to be performed and the charter could be obtained quicker if cash were paid for the stock. It is most significant that on no point was appellee contradicted by Mr. Croom and Mr. Harris. They were present at the trial. They must have heard the testimony of appellee; and yet, they did not become witnesses and deny a particle of this testimony. Their silence, under such circumstances, can only be construed to attest to the truthfulness and accuracy of appellee's testimony. We, therefore, conclude that no jury issue was raised. Brown v. McKinney, Tex.Civ.App., 208 S.W. 565, writ refused; City of San Antonio v. E. H. Rollins & Sons, Tex.Civ.App., 127 S.W. 1166; Felts v. Bell County, 103 Tex. 616, 132 S.W. 123; Fidelity & Casualty Co. v. Branton, Tex.Civ.App., 70 S.W.2d 780, 781, error dismissed; 41-B Tex.Jur., § 192, p. 228.

■ We now turn to a consideration of whether the court correctly rendered judg-

ment for appellee, or whether he erred in not granting appellants' respective motions for an instructed verdict.

Clearly, judgment was correctly rendered against Bayou Drilling Company because it merely pled a general denial. The note and chattel mortgage were introduced in evidence and appellee testified that there was a principal balance of $31,000 due.

■ The judgment of the trial court contained findings of fact and conclusions of law, but in a case tried to a jury where the trial court withdrew the case from the jury such findings of fact are without significance because we must decide if material facts were established as a matter of law. Sigmond Rothchild Co. v. Moore, Tex.Com. App., 37 S.W.2d 121.

■ Appellants contend that the evidence conclusively established that appellee was an officer and director and that he could not deal with the corporation. We cannot accede to the proposition that there may be absolutely no dealings between an officer and director and the corporation. An officer or director may deal with the corporation and the contract resulting may not be avoided unless the director's or officer's vote was necessary to authorize the transaction. If a director does not vote on the transaction and those who represent the corporation in the matter are fully acquainted with all of the facts and no fraud is practiced on those acting for the corporation, the transaction is binding. Tenison v. Patton, 95 Tex. 284, 67 S.W. 92; Medford v. Myrick, Tex.Civ.App., 147 S.W. 876, writ refused; McLendon Hardware Co. v. Black, Tex.Civ. App., 264 S.W. 1011; Zorn v. Brooks, Tex. Com.App., 125 Tex. 614, 83 S.W.2d 949.

In this case it is undenied that the corporation got the money sued for. The directors all knew all of the facts. While appellee, a director, was present at the directors' meeting which authorized the transaction, there is no evidence that he voted on the matter. As a matter of fact,

there is no pleading that he voted on the transaction but the pleading merely sets up the erroneous proposition that the mere fact appellee was an officer and director precluded any individual dealing with the corporation.

Martin Harris, the intervenor who has appealed, asserts there should have been no foreclosure on the property, except for an insignificant number of items, because the evidence conclusively established the property belonged to him individually. It will be recalled that appellee pled estoppel against intervenor, setting up that because of Harris' representations to appellee he is now estopped to assert he had not transferred the property as he agreed to do.

On this issue these are the undisputed facts established by appellee's testimony and not denied by Harris: By the agreement of May 26, signed by Harris, it was agreed that the equipment listed would be given by the corporation to be organized as part security for the note. Too, appellee testified this equipment was to be transferred to the corporation in payment for the capital stock. At the directors' meeting which authorized the execution of the chattel mortgage Harris was present though he was not a director. Harris delivered the note and chattel mortgage, the latter covering the equipment to appellee. Harris, though only manager, was actually fully in charge of the business. His bookkeeper, J. J. Paul, and Mr. Croom, his attorney, were directors. Appellee was president in name only. The minutes of the corporation were kept in Houston by Mr. Croom. The only physical asset which the corporation claimed to own was the equipment covered by the chattel mortgage. Appellee testified he was induced to loan the money because of the promise of a chattel mortgage on the property as part security for the loan. There was never any bill of sale to the property transferring it to the corporation. Harris, however, used the equipment in carrying on the corporation work.

■ We have concluded that these facts, corroborated by the silence of Harris and Croom at the trial, establish an equitable estoppel against Harris.

Pomeroy's Equity Jurisprudence, Fifth Edition, Sec. 804, page 189, defines equitable estoppel thus:

"Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy."

This is supported by the case of Lockhart State Bank v. Baker, Tex.Civ.App., 264 S.W. 566.

The conduct of Harris was such as to cause appellee to change his position in reliance thereon to his detriment. Harris was the moving force in the whole transaction. He actually signed the agreement to put his property into the corporation and got $14,500 used for corporate benefit, and then after the corporation was formed Harris delivered the prepared note and chattel mortgage to appellee. Appellee never knew until the petition in intervention was filed that the property had not been transferred. It was used in the corporate business. Harris' bookkeeper was the corporate bookkeeper and Harris was in charge of the business. At each time a check was delivered to Harris, the facts were such as to amount to a continuing representation by Harris that the property would (if it had not already been transferred) be transferred to the corporation. In 19 Amer.Jur., § 56, p. 667, this is stated as the rule:

"An owner of personalty who stands by and sees another sell or mortgage it to a third person without making known his title will be estopped afterward to assert his title against the purchaser or mortgagee."

See also Western National Bank v. Walker, Tex.Civ.App., 206 S.W. 544.

In the case before us Harris did more than just stand by. He was himself seeking money for the corporation to be formed and agreed to transfer the equipment, and, once the corporation was formed he brought the chattel mortgage covering the property to be executed by the corporation. This latter really amounts to a representation that it had been transferred.

Harris further contends that since $10,000 of the $35,000 was to be used by appellee to subscribe to corporate stock, there was thus a principal balance due of only $21,000. In the light of the facts above recited we must disagree.

■ Empress Oil Company seeks reversal on the ground that since it was incorporated to engage in the oil business, its endorsement of the note was beyond its authority. It contends the trial court should have granted its motion for instructed verdict. Appellee counters this assertion of nonliability with the contention that Empress Oil Company received a benefit from the transaction as evidenced by the fact it made four $1,000 payments; it was engaged in the same type of business as Bayou Drilling Company; and, that Croom and Harris were vitally connected with both businesses. He seeks to thus avoid what is conceded to otherwise be an ultra vires act. We cannot agree that there is any evidence of probative force showing Empress Oil Company received a benefit from the transaction and therefore hold the trial court erred in not granting the motion of Empress Oil Company.

The judgment of the trial court rendered against Bayou Drilling Company and Martin Harris is affirmed. The judgment of the trial court against Empress Oil Company is reversed and judgment is now rendered that appellee take nothing against Empress Oil Company.

### On Appellee's Motion for Rehearing

Appellee, George Baillio, has filed his motion for rehearing in which he urges we erred in holding that the trial court erred in rendering judgment in favor of appellee Baillio against Empress Oil Company. The contention of appellee is that the evidence shows Empress Oil Company is but the alter ego of Martin Harris, and to uphold the plea of ultra vires of such corporation would promote fraud in this case. Appellee urges that to prevent fraud we should pierce the corporate veil.

We have concluded that the facts, so far as they were developed in the trial court, fall short of showing that Empress Oil Company was but the alter ego of Martin Harris.

The evidence showed that Martin Harris at the time of the negotiations for the loan, represented to appellee that he owned 95% of the stock in Empress Oil Company. It also showed that John Croom, Harris's attorney, who figured prominently in the negotiations for the loan to Bayou Drilling Company, was president of Empress Oil Company. Too, when appellee testified in court to the above representation of Harris, Croom and Harris were present in Court and did not deny appellee's testimony. The evidence further shows that John Croom, as president of Empress Oil, endorsed the note. However, the evidence in the aggregate does not show Empress Oil Company to be the alter ego of Martin Harris. According to the evidence the ownership at least of 5% of the stock is in other persons. It is not shown who owns such stock. It is not shown that this stock is subject to the con-trol of Harris. The most that is shown by the testimony is that Harris, the majority stockholder, promised endorsement by Empress Oil and prevailed on its president to execute it. In no way were the owners of 5% of the stock connected with the transaction. It is no answer to say no stockholders are here complaining. We do not know who they are or what is their relation to Martin Harris. They were not parties to this suit and for all we know they know nothing of the suit. Minority stockholders have the right to insist that the corporation act only within the charter powers. Of course, in a case where the evidence shows other stockholders do the bidding of a majority stockholder, such as Harris, then they are but instruments of the majority stockholder, and the corporation is in fact but the personality of the majority stockholder. The evidence here makes no such case.

In support of his position appellee has cited the following cases: Boston & Texas Corporation v. Guarantee Life Insurance Co., Tex.Civ.App., 233 S.W. 1022; Continental Supply Co. v. Forrest E. Gilmore Co., Tex.Civ.App., 55 S.W.2d 622; and, Jackson v. M. H. Thomas Investment Co., 5 Cir., 46 F.2d 252.

We have studied each of those cases and concur in the conclusion reached in each. However, it will be seen in each of those cases, except the Continental Supply Company case, the stock of the corporation was owned substantially by one individual and the other shares were actually held by his nominees, and the stock so held by others was actually under his control. The evidence, therefore, showed that the corporation was but the alter ego of the majority stockholder. In the Continental Supply Company case one corporation, incorporated in Delaware, owned all of the stock of the Texas corporation.

We have, we believe, read all of the Texas cases dealing with the situation presented in this case. We shall not cite them, but of them it is sufficient to say that they

presented facts comparable to those found in the above cited cases and do not therefore control the case before us for the reasons above noted.

Appellee's motion, in so far as it seeks affirmance of the judgment against Empress Oil Company is overruled. However, we have concluded that the record evidences an incomplete development of the facts in connection with the liability of Empress Oil Company. Therefore, our judgment previously rendered in favor of Empress Oil Company will be set aside so that the judgment of the trial court as against Empress Oil Company will be reversed and the cause as against such Company is remanded to the trial court. The judgment of affirmance as against Martin Harris and Bayou Drilling Company heretofore rendered by us is undisturbed.