BLUE BELL, INC., Appellant,

v.

Edwin ISBELL, Individually and d/b/a Isbell Cleaners, Appellee.

No. 6526.

Court of Civil Appeals of Texas, El Paso.

Dec. 29, 1976.

Porter, Taylor, Gonzalez, Thompson & Rogers, Rick Rogers, J. Doug Wilshusen, Corpus Christi, for appellant.

Hasting & Hasting, Howard H. Hasting, San Antonio, for appellee.

## OPINION

WARD, Justice.

Blue Bell, Inc., filed suit on a sworn account to recover moneys due for merchandise sold and delivered. The Defendant, Isbell Cleaners, denied the justness of each and every item of the account under oath. Based upon the jury's answers to special issues submitted, judgment was entered that the Plaintiff take nothing. Legal and factual sufficiency of the evidence points are presented on this appeal by the Plaintiff which relied on computer printouts as part of the records of its cause of action. We reverse and render in part and in all other respects affirm.

Blue Bell, Inc., operated a part of its business under a division known as Red Kap Industries, which engaged in the business of manufacture and sale of industrial uniforms. The Plaintiff contended that the Defendant owed its Red Kap division $7,089.68 for uniforms purchased. This claim was partly supported by fifteen separate groups of orders, packing lists, and invoices which were introduced in evidence and given exhibit numbers between three and twenty-one. By the first special issue, the jury found that the merchandise shown on each of these fifteen exhibits was ordered by Isbell Cleaners from the Red Kap division. By the second special issue submitted, the jury found that out of the merchandise shown by the fifteen exhibits, the merchandise reflected by only nine of those exhibits was ever delivered to Isbell Cleaners. By answer to Special Issue No. 3, the reasonable market value of the merchandise

shown by the fifteen Red Kap exhibits was determined to be $.00 as to each of the exhibits.

In the summer of 1972, Blue Bell, Inc., purchased the manufacturing plant and other assets of an organization known as The Hayes Company. Part of these assets were that company's accounts receivable, and among those accounts was one totaling $7,970.02 allegedly owed by the Isbell Cleaners to The Hayes Company. This claim of The Hayes Company, which was also for industrial clothing, was supported in part by five invoices with attached orders and packing lists. These were identified, introduced, and given exhibit numbers between twenty-two and twenty-seven. By the fourth and fifth special issues submitted, the jury failed to find that any of the merchandise shown in each of these five exhibits was either ordered by or delivered to Isbell Cleaners. By answer to Special Issue No. 6, the reasonable market value of the merchandise shown by those five exhibits was determined to be $.00 as to each of the exhibits.

By the final special issue submitted, the jury determined that reasonable attorney's fees necessarily incurred in the preparation and trial of the case would be the sum of $2,300.00. As indicated, the Court accepted the verdict of the jury, entered a take nothing judgment, and this appeal by the Plaintiff results. The Plaintiff recognizes the general rule that once a verified denial is filed in an action brought on a sworn account, the force of the itemized account is destroyed and every item of the account must then be proved by competent evidence without the aid of Rule 185, Tex.R.Civ.P. *Charlie Thomas Courtesy Ford, Inc. v. Sid Murray Agency*, 517 S.W.2d 869 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.). Essential elements of such proof are generally (1) sale and delivery of the merchandise, and (2) that the amount of the account is just, or, in other words, that the prices charged are in accordance with the agreement, or, in the absence of agreement, that they are usual, customary or reasonable. *Opryshek v.*

*McKesson & Robbins, Inc.*, 367 S.W.2d 357 (Tex.Civ.App.—Dallas 1963, no writ); *Marr v. Craddock*, 406 S.W.2d 278 (Tex.Civ.App. —Tyler 1966, no writ). The Plaintiff must show that the Defendant agreed to pay the prices charged by the Plaintiff for the material sold, or that the prices were reasonable or customary. *Parker v. Center Grocery Company*, 387 S.W.2d 903 (Tex.Civ. App.—Tyler 1965, no writ). As stated by another authority, one of the essential elements of the proof is the justness of the account. This can be shown in two ways: either that the prices charged were agreed upon by the parties, or, in the absence of an agreement, that the prices were usual, customary or reasonable. *Brooks v. Eaton Yale and Towne, Inc.*, 474 S.W.2d 321 at 323 (Tex.Civ.App.—Waco 1971, no writ).

The problem of primary importance to the Plaintiff on this appeal concerns the zero findings on market value. On both series of orders, the case was submitted as to what was the reasonable market value of the merchandise involved. A review of the record shows there was no proof introduced which would have justified this submission. The only testimony regarding prices was that the respective prices were those being then currently charged. Compounding the Plaintiff's difficulty in this regard is the fact that no objection was made to these issues submitting reasonable market value.

Complaint was made and preserved by the Rule 301, Tex.R.Civ.P. motion that the findings to Special Issues Nos. 3 and 6 should be disregarded on the ground that the undisputed and uncontroverted evidence showed that the prices set out in each exhibit were those "then currently being charged for the merchandise" by the Plaintiff; that the undisputed and uncontroverted evidence showed the delivery to the Defendant of all the merchandise; and that since the evidence failed to show any objection by the Defendant to any of the charges for any of the merchandise, his acquiescence to the prices charged was shown and as a matter of law he should be charged with his approval of those prices.

Whether or not the trial Court should have disregarded the jury findings regarding reasonable market value of the merchandise and to have then entered judgment for the Plaintiff depends first upon the authority of the Court to act on the Rule 301 motion, and second on the quantity and quality of the proof offered by the Plaintiff as to the amount of the account.

As to the authority of the trial Court, it can disregard a special issue only when it has no support in the evidence or when the issue is immaterial, and a special issue is immaterial when (1) it should not have been submitted, or (2) though properly submitted, it has been rendered immaterial by other findings. *C. & R. Transport, Inc. v. Campbell*, 406 S.W.2d 191 (Tex.Sup. 1966); 4 McDonald, Texas Civil Practice, Secs. 17.30–17.32.

As shown, the issues as to reasonable market value of the merchandise should not have been submitted as there was no evidence of that value. As later pointed out, the submission on the proper theory of an agreed price or usual price was rendered immaterial, at least in part. The remaining hurdle for the Plaintiff to then have overcome was whether it introduced such a mass of evidence that it was entitled to a finding as to the prices as a matter of law. The evidence as to the prices charged must be found in the business records, the circumstances in the case, and the testimony of Ben Martin, who was the manager of the customer accounts for Red Kap Industries and who was an interested witness. "The general rule is that evidence given by an interested witness, even though uncontradicted, presents an issue to be determined by the trier of fact. This rule is not without exception, however, and conclusive effect may be given to the testimony of an interested witness provided the testimony is clear, direct and positive and there are no circumstances tending to discredit or impeach the same. There is an added reason for recognizing the exception when the opposite party had the means and opportunity of disproving the testimony, if it were not true, and failed to do so." *Gevinson v.*

*Manhattan Construction Company of Oklahoma*, 449 S.W.2d 458 at 467 (Tex.Sup.1969).

In general, Mr. Martin testified that he had been the manager of customer accounts for Red Kap for the past eight years; that he was in charge of and had the custody and control of all of the records relating to the sales made to the Isbell Cleaners; that all of the records were kept in the due and ordinary course of business of Red Kap; that all entries on the records were made about the time that the transaction recorded transpired, and were originally made by someone who had personal knowledge of the individual entry. He stated that when an order for uniforms was made, it was first entered in writing on an order form which showed the name and address of the customer, the size and number of the uniforms ordered, and that it was made by a person who had personal knowledge of that transaction. The order form was then transferred and entered into a computer by trained personnel for printing of packing lists and for the preparation of invoices which were made in six or seven copies; that the invoices contained the name and address of the customer, the order date, the invoice number, the list of clothing shipped and the prices charged and their totals, together with the due date of the expected payment. One of these copies was sent to the customer within twenty-four hours of the shipment. He testified that the prices charged were those currently charged by Red Kap for each specific item. Mr. Martin then identified fifteen separate Red Kap invoices, each with supporting written order forms relating to each respective invoice. Most of these were with additional supporting documents reflecting Red Kap's records as to the route each of these orders was shipped and the common carrier used. It was these fifteen separate invoices, with their respective order forms, packing lists, and shipment data, which were introduced into evidence and given exhibit numbers between three and twenty-one; it was the clothing described in these fifteen separate invoices and exhibits which the jury determined had all been ordered by Isbell Cleaners from the Red Kap Division.

Of these fifteen separate shipments and exhibits, nine of these were supported by a receipt purportedly signed by the Defendant Isbell or one Kathy Borah, who was identified as being an employee for Isbell Cleaners. The delivery of the merchandise reflected by these nine items was further supported by the testimony of Mrs. Myra Lear, an employee of Merchants Fast Freight who had custody of their records and who identified the delivery receipts as being copies of original records retained by Merchants Fast Freight. It was this merchandise, as reflected by these nine exhibits, which the jury determined was delivered to the Isbell Cleaners. These deliveries were made in July and August, 1972, and as to this merchandise Mr. Martin testified that these invoice prices, along with the rest of the account, were still due and owing by Isbell Cleaners.

We have determined that as to these nine shipments, there were no circumstances discrediting the testimony of Mr. Martin that the sums reflected by these inventories were still due and owing. This oral testimony was corroborated in full by the documentary evidence, by the receipts referred to, and finally by the silence of the Defendant Isbell. If these amounts were not due and owing to the Plaintiff, Isbell certainly had the means and opportunity of disproving the testimony if it were not true. No attempt was made to disprove this testimony on the nine shipments which the jury determined had been delivered to Isbell Cleaners. His silence under these circumstances can only be construed to attest to the truthfulness and accuracy of the amount that was then due and owing on these nine shipments, and as to these we conclude no jury issue was raised. *Bayou Drilling Co. of Texas v. Baillio*, 312 S.W.2d 705 (Tex.Civ.App.—Houston 1958, writ ref'd n.r.e.). At no time did the Defendant object to the prices listed in the invoices from the date he received the material and the invoices until the time of trial. Under these circumstances, his failure to object compels the inference of his approval of the prices so as to establish a stated account at the prices set forth in the invoices. *Gra-*

*ham v. San Antonio Machine and Supply Corporation*, 418 S.W.2d 303 at 312 (Tex. Civ.App.—San Antonio 1967, writ ref'd n.r. e.). The jury having determined that these nine shipments were delivered to Isbell Cleaners, the only conclusion that can be reached was that Isbell Cleaners owed the amounts reflected by the invoices.

In other words, it having been found that these goods were ordered and were delivered, a finding that the Defendant agreed to pay the price of the merchandise as listed in the invoices was rendered immaterial. *New Trends, Inc. v. Stafford-Lowdon Company*, 537 S.W.2d 778 (Tex.Civ.App.—Fort Worth 1976, writ ref'd n.r.e.), and 4 McDonald, Texas Civil Practice, supra.

What we have stated is limited to those nine Red Kap exhibits, and the Plaintiff's points on appeal Nos. 4 and 6 are sustained insofar as they relate to those nine Red Kap exhibits, which are numbers 3, 4, 6, 9, 10, 13, 19, 20 and 21. We have considered the evidence under the legal sufficiency test and all of the evidence under the factual sufficiency test, and after having done so, all other points of the Plaintiff are overruled. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.Sup.1965).

■ In two counterpoints, the Defendant contends that the Plaintiff's records should not have been admitted into evidence, arguing in the main that all records of The Hayes Company did not qualify for the exception to the hearsay rule as provided by Art. 3737e, Tex.Rev.Civ.Stat.Ann. Mr. Martin was used to testify as to The Hayes Company records, which he stated he had verified as being correct. However, he had never been associated with The Hayes Company prior to its acquisition by the Plaintiff, the only records available were those which had been stored for use by a computer, and he knew nothing as to the manner that they had been kept except from what he had been told. Those records failed to qualify under the statute. *University Savings and Loan Association v. Security Lumber Company*, 423 S.W.2d 287 (Tex.Sup. 1967). For this additional reason, all of the

**568**

Appellant's points concerning The Hayes Company account are overruled. Under the latter authority, the records of Red Kap are admissible.

The merchandise represented by the nine Red Kap exhibits discussed totalled $5,627.81. The judgment of the trial Court that the Plaintiff take nothing is reversed and is here rendered that the Plaintiff recover of and from the Defendant the sum of $5,627.81, with interest thereon at the rate of six percent (6%) per annum from January 1, 1973, together with attorney's fees in the amount of $2,300.00. In all other respects, the judgment of the trial Court is affirmed. Tex.R.Civ.P. 434.