**BLUEBONNET EXPRESS, INC., Appellant,**

v.

**EMPLOYERS INSURANCE OF WAUSAU, Appellee.**

**No. B14–82–128CV.**

Court of Appeals of Texas, Houston (14th Dist.).

April 28, 1983.

Rehearing Denied June 9, 1983.

Douglas S. Johnston, Clare S. Hirling, Crady & Peden, Houston, for appellant.

E. Ray Edwards, Gann, Fried & Edwards, Houston, for appellee.

Before PAUL PRESSLER, MURPHY and ROBERTSON, JJ.

MURPHY, Justice.

Appellant filed a motion for rehearing and also a motion for an en banc consideration of the procedural issues presented by this appeal. We grant the motion for rehearing, withdraw our former opinion, set aside our former judgment, deny the motion for an en banc consideration, and substitute this opinion for the one of February 24, 1983.

Bluebonnet Express, Inc. (Bluebonnet) appeals the trial court's judgment in favor of Employers Insurance of Wausau (Wausau) in the amount of $52,155.12 plus costs and attorney's fees. Wausau brought suit on a sworn account under Tex.R.Civ.P. 185 to recover disputed insurance premiums computed by a retrospective premium plan formula. Trial was to the court. Appellant assigns six points of error, arguing under each point that the trial court erred in particular actions because there was no evidence or insufficient evidence to sustain those actions. We sustain Appellant's "no evidence" points, despite its failure to file any predicate motions which would have pointed out the inadequacy of the evidence to the trial court. Reversed and rendered.

Between March 1969 and January 1972, Wausau sold Bluebonnet a total of twelve policies, the final premiums of which were disputed. The premiums of the initial policies issued in March 1969 were calculated according to a "standard premium level dividend plan," under which the amounts of the premiums were constant and dividends or rebates were computed as a set percentage of the premiums. Wausau computed these standard premiums by taking Bluebonnet's previous high loss experience into account as a "loss ratio" factor (dollar amount of claimed losses divided by the premium paid), also termed an "experience modifier" by the State Board of Insurance. In response to Bluebonnet's desire to reduce the premiums and avoid being penalized for past losses, Wausau recommended that the method of calculating the premiums be changed.

On March 1, 1970 Bluebonnet's workers' compensation, general liability, automobile liability and physical damage policies were converted from the "standard premium level dividend plan" to another premium formula known as "retrospective plan D." Under the retrospective method of determining premiums, Wausau first estimated the annual premium due on each policy. This estimate, synonymous with "standard premium," appeared on the face of the policies as a "total estimated annual premium." At the end of each policy year, Wausau considered Bluebonnet's actual claims under each policy during the prior year and adjusted each estimated premium accordingly.

The Wausau salesman who had direct dealings with Bluebonnet testified that the final premium due, after adjustment for claims during the pertinent period, could range from a minimum of 65% of the estimated premium, if losses were low, to a maximum of 135% of the estimated premium, if losses were high. Therefore, the losses incurred during the prior year had a direct effect on the choice of the multiplier within the range of 65% to 135%.

Wausau brought suit on a sworn account under Tex.R.Civ.P. 185 to recover amounts allegedly due as retrospectively calculated premiums under twelve policies issued to Bluebonnet for the period March 1970 to March 1972. Bluebonnet filed a proper verified denial under Tex.R.Civ.P. 93(k).

Trial was to the court. The evidence consisted of the testimony of two employees of Wausau and of the following documents:

Plaintiff's Exhibit 1: Standard Workmen's Compensation and Employers' Liability Insurance Policy No. 1612–00–047877, estimated annual premium of $12,821.00, policy period from 3–1–71 to 3–1–72;

Plaintiff's Exhibit 2: Standard Workmen's Compensation and Employers' Liability Insurance Policy No. 1619–00–047877, estimated annual premium of $14,707.00, policy period from 3–1–69 to 3–1–70;

Plaintiff's Exhibit 3: Standard Workmen's Compensation and Employers' Liability Insurance Policy No. 1611–00–047877, estimated annual premium of $13,906.00, policy period from 3–1–70 to 3–1–71;

Plaintiff's Exhibit 4; Combination Casualty Policy No. 1622–00–047877, estimated annual premium of $46,157.00, policy period from 3–1–71 to 3–1–72;

Plaintiff's Exhibit 5: Demand letter dated 10–9–72 from Wausau's Regional Credit Manager to Bluebonnet for the sum of $74,529.00;

Plaintiff's Exhibit 6: Demand letter dated 3–22–72 from Wausau's Regional Credit Manager to Bluebonnet for the sum of $44,286.40;

Plaintiff's Exhibit 7: Statement of Bluebonnet's account for the period 1–2–71 to 8–1–74, showing dates of transactions, invoice numbers, charges, credits and a "final gross amount due" of $52,155.12;

Plaintiff's Exhibit 8: Combination Casualty Policy No. 1621–00–047877, estimated annual premium of $13,198.00, policy period from 3–1–70 to 3–1–71;

Plaintiff's Exhibit 9: Combination Casualty Policy No. 1622–00–047877, estimated annual premium of $46,157.00 policy period from 3–1–71 to 3–1–72. (Duplicate of Plaintiff's Exhibit No. 4).

Plaintiff's Exhibits 1–6 were admitted into evidence with no objection by Bluebonnet's counsel.

The contents of Plaintiff's Exhibit 7, the account upon which Wausau brought suit, and the circumstances under which it was admitted into evidence deserve careful analysis. The balance due as shown on that document was $52,155.12, the same amount awarded to Wausau by the trial court.

Initially the account was excluded on several grounds, including lack of proper predicate, hearsay, irrelevance, and the best evidence rule (i.e., that the original invoices and not a ledger sheet summary would have been the best evidence of the claims.) After Plaintiff's Exhibit 7 supposedly had been associated with Bluebonnet by the testimony of Jack Marsalis, a Wausau salesman who was in charge of Bluebonnet's policies, the following interchange occurred:

PLAINTIFF'S COUNSEL: Your Honor, I would again offer Plaintiff's Exhibit No. 7. The witness had identified it as the document received by Bluebonnet Express, Mr. Groves, that he received a copy of it showing the amount due on the account.

DEFENDANT'S COUNSEL: Your Honor, we would reurge the objections as to the hearsay rule and as to the best evidence rule. I would have to say, though, that this document has been connected up to my client now, and it would seem to me that *it probably is admissible for the*

*sole reason that is an instrument received by my client showing what Mr. Edwards alleges is due, but not for the truth of anything contained therein.*

THE COURT: I will permit it *for that reason....* (emphasis added).

The witness then explained that the computations performed by the retrospective plan D method in late 1973 and 1974 accounted for the reduction of the balance due, as shown on the account, from $75,360.90 to $52,155.12. The witness then acknowledged on voir dire that Plaintiff's Exhibit 7 could not be the document allegedly received by Jack Groves of Bluebonnet on January 30, 1973 since a number of entries, including credits, were made after that date. The following exchange occurred when the court placed a further limitation on the document's probative value:

DEFENDANT'S COUNSEL: You testified earlier that Mr. Groves had, to your knowledge, received the document on or about January 30th, 1973. Isn't that correct?

MARSALIS: I did. *He received one similar, but it was not this one.*

DEFENDANT'S COUNSEL: It was not this document?

MARSALIS: No.

DEFENDANT'S COUNSEL: Your Honor, on the basis of that testimony, we move to strike the admission of Plaintiff's Exhibit 7.

PLAINTIFF'S COUNSEL: Your Honor, we offer this for the limited purpose of showing the account balance, *not that they owe this amount, but only so that this gentlemen could tell us why the figures dropped down from what the company said Bluebonnet owed to what they are now, since he is in a position to say why the insured got the credits.*

THE COURT: *I will permit it in with that limited purpose, but I am not letting it in as the instrument received by Mr. Jack Groves. It is one like it. Mainly for the purpose of discovering the variance between the $75,000 figure and the $52,155.12 figure.*

DEFENDANT'S COUNSEL: Just so I am clear on this, Your Honor, my objection is the fact that neither the $75,000 figure nor the $52,000 figure has been tied to my client. So far as we know, this instrument is simply an instrument that has been passed back and forth in Wausau. It doesn't have anything to do with my client at all at this point.

THE COURT: I understand. It has his name on it. I am counting on this gentleman tying it in later. (emphasis added).

When Mr. Marsalis resumed his explanation about the reduction in the account balance because of retrospective plan D adjustments, the court interjected:

THE COURT: I understand what he is saying, and that reduced it down from the $75,360 down to $52,155.12, according to this gentleman. *I am not accepting that as the truth of the matter asserted. I am accepting that as what this gentleman has said.* (emphasis added).

Shortly thereafter, the following occurred:

PLAINTIFF'S COUNSEL: From those policies that you see there in front of you, is it possible to calculate the retro adjustments on that account sheet that is admitted in front of you, sir, just from the policies that you got?

MARSALIS: Just from the policies, no.

PLAINTIFF'S COUNSEL: What else would a person need in order to determine whether or not that contract that you see there in the form of those policies has been complied with or not, sir?

MARSALIS: The incurred losses would not show on the policies... The tax factor is here. Yes, all the factors are here except for the incurred losses.

PLAINTIFF'S COUNSEL: And that is information obtained from the state, am I correct?

MARSALIS: Yes, sir.

PLAINTIFF'S COUNSEL: Each and every one of the policies that you sold to Bluebonnet ... were those approved contracts by the State of Texas or not?

MARSALIS: Yes, sir.

It is clear that the testimonial and documentary evidence introduced up to this point in the trial contained several limitations on its probative value. The final premiums due under the four policies in evidence and the eight policies not in evidence could not be computed under the retrospective rating method without additional data relating to each policy: (1) the amount of incurred losses for the policy period, and (2) the precise multiplier chosen in the range between 65% and 135%. Plaintiff's Exhibit 7 was not admitted for the truth of its contents or assertions, including the fact that Bluebonnet was connected with it in any way, or even to show that Wausau actually claimed the "gross amount due" of $52,155.12, but merely for the limited purpose of allowing the witness to explain the reduction in "gross amount due" from $75,360.00 to $52,155.12. Furthermore, it was established that Plaintiff's Exhibit 7 was not the document received by Bluebonnet. An entry by entry analysis of Plaintiff's Exhibit 7 reveals that only a few debits and credits can be positively connected with policies in evidence, that a number of the entries refer to policies not in evidence, and that most entries cannot be identified with certainty at all.

The second and final witness was John P. Hiegel, Jr., Regional Credit Manager of Wausau since 1980. Although Mr. Hiegel brought copies of all policies sold to Bluebonnet, Appellee's attorney offered only two of them, Plaintiff's Exhibits 8 and 9, into evidence. The court admitted them for the limited purpose of proving those two policies had been issued to Bluebonnet.

Shortly thereafter, Mr. Hiegel testified that the account balance owed by Bluebonnet, as depicted by Plaintiff's Exhibit 7, was accurate. Bluebonnets' counsel objected to that testimony and the following occurred:

APPELLANT'S COUNSEL: Your Honor, we object on that answer. It has to be hearsay. This his gentleman [sic] hasn't given us any predicate or framework on which to base this conclusion that this is an accurate balance. *We have already gotten a lot of testimony from a prior witness that the way you go about computation, we have losses and reserves. We haven't gotten any testimony whatsoever about what losses and what reserves.* This gentleman doesn't qualify as a gentleman who has knowledge of what the losses and reserves are. Therefore, his answers to the last question has [sic] to be hearsay, and his attempted statement that this is an accurate and true statement of the account may be hearsay. And we move that it be stricken. *In addition, I would reurge an earlier objection to Plaintiff's Exhibit No. 7* which is that this exhibit appears to be a summary of other documents which apparently have been in existence, and as a summary, it is not admissible unless the materials are made available here in court for purpose of examination, Your Honor . . .

APPELLEE'S COUNSEL: Your Honor, he is stating. That is all he can. [sic] He is saying that goes to the weight and credibility of the man's testimony.

THE COURT: *I am going to let him testify as to what the record reflects. Show what the record reflects and I will permit that in.*

APPELLEE'S ATTORNEY: *What does the record reflect, sir, on the net balance due?*

MR. HIEGEL: *It shows a net balance due of $52,155.12.*

APPELLEE'S ATTORNEY: Sir, when this dispute arose, to your knowledge, was the file that was established on Bluebonnet referred out to local counsel for the purpose of prosecuting Bluebonnet for the delinquency or not?

APPELLANT'S ATTORNEY: Your Honor, the testimony in this case is that this gentleman has been a credit manager for a year or something like that. This dispute arose back in 1971 and '72 according to the testimony. Therefore, unless this gentleman can be connected up with the facts in existence in that time period, I suggest that his testimony must be hearsay, and we would object. I would

be glad to take the witness on voir dire to further clarify that.

THE COURT: If you will do it quickly, I will permit that. I realize that he has only worked for the company for about a year, so he knows nothing that preceeded that period except what is in the record.

Is that correct?

MR. HIEGEL: That is correct.

THE COURT: I don't have any fault with letting the records in. (emphasis added).

Based on the testimony of the two witnesses and the nine plaintiff's exhibits, the trial court entered judgment in favor of Wausau in the amount of $52,155.12, the "final gross amount due" as shown on Plaintiff's Exhibit 7.

Bluebonnet assigns six points of error. We need reach only the first four, which in summary assert trial court error in "rendering judgment" in favor of Wausau for additional premiums due under the four policies which were introduced into evidence, because there was either no evidence or insufficient evidence of standard premiums and incurred losses; with respect to the eight policies not introduced into evidence, Appellant asserts trial court error in "rendering judgment" in favor of Wausau when there was no evidence or insufficient evidence of the method of calculating the premiums and of the fact that any additional premiums were due.

This case contains both procedural and evidentiary issues. Since Bluebonnet must surmount certain procedural obstacles before it is possible to reach the evidentiary questions, we will consider the procedural aspects first.

We believe this to be the first case to interpret procedural requirements for raising legal insufficiency ("no evidence") and factual insufficiency ("insufficient evidence") points of error on appeal from a non-jury trial under the 1981 amendment to Tex.R.Civ.P. 324.

Although Appellant's counsel in this non-jury case made lengthy objections to the admission of certain evidence, as the previously quoted passages illustrate, Appellant did not lay any additional procedural predicates, such as a motion for judgment or motion for new trial, in the trial court in preparation for asserting legal insufficiency points. Furthermore, Appellant used the phrase, "rendering judgment," in all four points of error. The absence of predicate motions and the use of this catch phrase constitute the procedural issues we will address.

## RAISING LEGAL OR FACTUAL SUFFICIENCY OF THE EVIDENCE

By way of background to the most recent change in wording, the Texas Supreme Court had noted that effective January 1, 1978, Rule 324 was amended to eliminate the necessity of a making a motion for new trial as a prerequisite to complain of alleged trial court errors on appeal, in nonjury and even in most jury cases. *Howell v. Coca-Cola Bottling Company of Lubbock, Inc.,* 599 S.W.2d 801 (Tex.1980) (per curiam); Tex.R.Civ.P. 324 (1978). While refusing the *Howell* application for writ of error, finding no reversible error, the Supreme Court specifically disapproved that portion of the Court of Civil Appeals opinion "which holds that Rule 324 . . . required the plaintiff in a non-jury action to file a motion for new trial as a predicate to preserve the alleged error." 599 S.W.2d at 801. The pertinent part of the lower court decision which was *disapproved* stated:

> Except in certain unusual circumstances not pertinent here, an appellant must be able to demonstrate in the record before the appellate court that the error complained of was presented to, rejected by and preserved in the trial court . . . Specifically, where a party is denied the right to amend pleadings after a special exception is sustained, *and the record does not otherwise reflect that fact,* a motion for new trial is required to preserve the error . . . The record before this court does not preserve the error advanced. No motion for new trial was filed and *nothing in the record before us demonstrates* a denial of the right to amend . . . We are not willing to presume error.

*Howell v. Coca-Cola Bottling Co. of Lubbock,* 595 S.W.2d 208, 213–214 (Tex.Civ. App.—Amarillo 1980) (emphasis added).

In disapproving the quoted portion of the Amarillo Court of Civil Appeals opinion, which was consistent with *Brock v. Brock,* 586 S.W.2d 927 (Tex.Civ.App.—El Paso 1979, no writ), the Supreme Court apparently held that even when there is nothing in the record to show a complaint had been presented to the trial court, no motion for new trial is necessary as a predicate to preserve error in a non-jury case; the court also impliedly approved the conflicting result reached by the Eastland Court of Civil Appeals in *Brown v. Brown,* 590 S.W.2d 808 (Tex.Civ.App.—Eastland 1979, no writ). 599 S.W.2d at 801.

The Supreme Court holding is deceptively simple, causing commentators to disagree on its effect. One explanation of *Howell* focuses on the Supreme Court's rejection of the *Brock v. Brock* requirement of a motion for new trial in a non-jury case as an appellate predicate for presenting legal or factual insufficiency points. Proponents of this view deduce that in the light of *Howell,* Rule 324 as it was amended effective January 1, 1981 "now more clearly limits the necessity of a motion for new trial to those instances which require an evidentiary hearing." Pope and McConnico, *Practicing Law with the 1981 Rules,* 32 Baylor L.Rev. 457, 498–499 (1980). Another commentator points out other possible interpretations of the Supreme Court's holding:

It is one thing to say that a motion for new trial is not a prerequisite to appeal if the appellant has not otherwise preserved his point for appeal by presenting his position to the trial court. It is quite another to say that if he has not presented his position before judgment is rendered against him, he need not do so afterward, by motion for new trial or otherwise, in order to complain of the

judgment .... If the [*Howell*] opinion is read as dispensing with the requirement that a party must make known his position to the trial court before complaining of an adverse judgment, then a major uncertainty has been created concerning the extent of complaints that may be raised on appeal without presentation in the trial court.

Guittard, *Other Significant Changes in the Appellate Rules,* 12 St. Mary's L.J. 667, 677–678 (1980).

Because of the provisions of Tex.R.Civ.P. 373,[1] and the notions of judicial economy and fairness, we cannot subscribe to the view that *Howell* totally eliminates the requirement that a party must make known his position, in some fashion, to the trial court in order to preserve his point on appeal.

Rule 324, pertaining to Prerequisites of Appeal, was amended effective January 1, 1981 and now provides in pertinent part:

A motion for new trial shall not be a prerequisite to the right to complain on appeal, in any jury or non-jury case. A motion for new trial may be filed by any party, however, and the omission of a point in such motion shall not preclude the right to make the complaint on appeal. Notwithstanding the foregoing, it shall be necessary to file a motion for new trial in order to present a complaint upon which evidence must heard, such as one of jury misconduct or of newly discovered evidence.

In the past courts and attorneys have labored under complex and technical procedural requirements for raising legal insufficiency points of error on appeal from jury trials. *See,* e.g., Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 Texas L.Rev. 361 (1960); O'Connor, *Evidence Points on Appeal,* 37 Tex.B.J. 839 (1974), reprinted in 12 Hous.L.Rev. 65 (1974). In years gone by, to raise

---

1. Rule 373. Exceptions Unnecessary

Formal exceptions to rulings or orders of the court are unnecessary; but for all purposes for which an exception has heretofore been necessary it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he

desires the court to take *or his objection to the action of the court and his grounds therefor; and, if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice him.* (emphasis added).

a "no evidence" argument before an appellate court the appellant must have filed one or more predicate motions, all of which were designed to bring the inadequacy or absence of the proof of a vital fact to the attention of the trial judge, enabling him to correct his error and render judgment for the moving party before he lost jurisdiction. Calvert, *supra*, at 362. Therefore, in addition to making pre-judgment motions, an appellant could file a motion for new trial as well. *Rosas v. Shafer*, 415 S.W.2d 889 (Tex.1967). Regardless of which of the several motion options an appellant selected, it was necessary that the trial court be told explicitly what its error was. *J. Weingarten, Inc. v. Razey*, 426 S.W.2d 538 (Tex. 1968).

However, no such requirements have been imposed on appeals from non-jury trials. It has been possible to raise both legal and factual sufficiency of the evidence points for the first time on appeal from a bench trial. *Conrad v. Artha Garza Co.*, 615 S.W.2d 238 (Tex.Civ.App.—Dallas 1981, no writ); *Brown v. Brown*, 590 S.W.2d 808.

The Texas Supreme Court quite recently has made it clear that no appellate predicate motions need be made in a non-jury trial in order to assert "no evidence" points on appeal. Citing *Swanson v. Swanson*, 148 Tex. 600, 228 S.W.2d 156 (Tex.1950), the court in *Kissman v. Bendix Home Systems*, 587 S.W.2d 675 (Tex.1979) focused on the necessity of filing a statement of facts in order to object to findings of fact for the first time on appeal. 587 S.W.2d at 677–678. We believe the *Kissman* rationale to be applicable to the case at bar, for although findings of fact and conclusions of law were requested and filed in the trial court, none were required. Tex.R.Civ.Pro. 296. The crucial document according to *Kissman* and *Swanson* is the statement of facts, and obviously it was filed in this case.

This issue was discussed in the context of a jury trial in *Page v. Pete Singh Produce, Inc.*, 624 S.W.2d 674 (Tex.App.—El Paso 1981, writ ref'd n.r.e.):

... we fail to see where in either a jury or non-jury trial that a "no evidence point" must be presented to the trial Court during either the trial or on motion for new trial, for it to be preserved for consideration on appeal.

*Id.* at 675.

Under circumstances such as these, in which trial was to the court and where lengthy and detailed objections to and delineation of the evidence occurred throughout the proceeding, any predicate-laying motion, including a motion for new trial, would have been a futile gesture. As Justice Guittard has observed, "(i)nasmuch as a judge who has decided the facts must necessarily have considered the question of whether his findings are supported by the evidence, no motion for new trial should be required to give him another opportunity to rule on that question." Guittard, *supra*, at 678. The same rationale should apply to other types of motions as well.

■ It is elementary that the judgment of the trial court must "conform to ... the nature of the case proved ...." Tex.R. Civ.Pro. 301. In other words, the judgment must be founded on competent evidence. We hold, therefore, that where in a non-jury case the court, by timely and informative objection of counsel in compliance with Rule 373, is made aware of severe limitations on the probative value of all the evidence, no predicate-laying motions need be filed in the trial court before or after judgment in order to assert "no evidence" points on appeal.

The next question is whether Bluebonnet is permitted to assert factual insufficiency on appeal from a non-jury trial when it filed no motion for new trial or any other predicate.

■ From 1978 to 1981, it was possible under the express language of Rule 324 to complain of jury findings on the basis of factual insufficiency for the first time on appeal.[2] When Rule 324 was amended ef-

---

2. A complaint that one or more of a jury's findings have insufficient support in the evidence or are against the overwhelming preponderance of the evidence as a matter of fact may be raised for the first time on appeal. Tex.R. Civ.P. 324 (1978).

fective January 1, 1981, the sentence allowing the assertion of factual insufficiency of jury findings for the first time on appeal was eliminated. To reiterate, the current provision states the general rule that "[a] motion for new trial shall not be a prerequisite to the right to complain on appeal, in any jury or non-jury case", subject to one exception: when the motion would be a necessary vehicle "to present a complaint upon which evidence must be heard". Tex. R.Civ.P. 324. If no new evidence need be heard, a motion for new trial is now an unnecessary predicate to appeal on any grounds in jury or non-jury cases. The assertion of factual insufficiency does not involve the taking of new evidence. We hold, therefore, that Rule 324, as amended effective January 1, 1981, even though it does not expressly say so, allows a party to raise factual insufficiency points of error for the first time on appeal from a non-jury trial without having made any predicate motion in the trial court.

## THE USE OF "RENDERING JUDGMENT"

■ A second procedural aspect of this case involves Appellant's use of the phrase, "rendering judgment," in its points of error. In each point, Appellant asserted that "the trial court erred in rendering judgment for the plaintiff . . ."

This particular catch phrase has caused trouble in the past. The origin of all the mischief is *Chemical Cleaning, Inc. v. Chemical Cleaning and Equipment Service, Inc.*, 462 S.W.2d 276 (Tex.1970) (per curiam), in which the Supreme Court made the statement that "a point of error which states that the trial court erred in rendering judgment on a verdict because of the state of the evidence—if it is adequate for any purpose—is only a 'no evidence' point."

462 S.W.2d at 277.

Despite the fact that some courts have cited it in the context of non-jury trials, *Chemical Cleaning,* if it has any vitality at all in 1983, is pertinent only in appeals from jury trials. Furthermore, *Chemical Clean-*

*ing* was decided twelve years ago, and we believe the spirit as well as the substance of the present Texas Rules of Civil Procedure dictate a very different result from the one advanced by the dissent because of its reliance on that case and its progeny.

The Supreme Court has had a longstanding policy against elevating form over substance when interpreting points of error. Long before the more recent changes in the Rules, the Court in *Fambrough v. Wagley,* 140 Tex. 577, 169 S.W.2d 478 (1943), recognized that the purpose of the then— extant Rule 418 concerning the contents of briefs was to simplify "the briefing of cases so that greater attention will be devoted to the presentation of the merits of the appeal and less attention given to the mechanics of the brief." 169 S.W.2d at 482. In contemporary appellate practice, Tex.R.Civ.P. 1, 418, and 422 expressly command a liberal construction of the briefing rules. Justice Calvert has contended that "magic in words in points of error should be as extinct as the dodo bird." Calvert, *supra,* at 361. We agree, and hold that Appellant's use of the phrase, "rendering judgment," in its brief does not limit its basis of appeal to legal insufficiency or "no evidence" grounds.

## EVIDENTIARY ISSUES

■ We now turn to the evidentiary issues in this case. Wausau brought a suit on a sworn account under Tex.R.Civ.P. 185 for the unpaid premiums allegedly totaling $52,155.12, the same figure as appeared on Plaintiff's Exhibit 7. A suit on a sworn account is the proper vehicle for recovery of insurance premiums. *Rudi's Automotive Corporation v. Heeth,* 509 S.W.2d 428, 429 (Tex.Civ.App.—Houston [1st Dist.] 1974, no writ). Bluebonnet filed a proper denial under Tex.R.Civ.P. 93(k), the effect of which was to put Wausau on proof of its claim without the aid of presumption arising from Rule 185. *Booher v. Criswell,* 531 S.W.2d 844, 845 (Tex.Civ.App.—Dallas 1975, no writ). Essential elements of proof in a suit on a sworn account are (1) sale and delivery of merchandise and (2) that the amount of the account is "just," which means that prices charged are in accordance with an

express contract, if one exists, or in the absence of a contract, that the charges are usual, customary, or reasonable. *Blue Bell, Inc. v. Isbell,* 545 S.W.2d 563, 565 (Tex.Civ. App.—El Paso 1976, no writ).

Any testimony as to usual, customary or reasonable charges is not relevant when there is a contract. *Id.* Wausau cites *Rudi's Automotive* for the proposition that the insurance policies were not required as evidence, but we find that case to be clearly distinguishable from this set of facts. In *Rudi's Automotive,* no proper sworn denial under Rule 93(k) was filed. 509 S.W.2d at 430. Furthermore, the ledger sheet attached as an exhibit to the plaintiff's pleadings in that case, in contrast to Plaintiff's Exhibit 7, contained detailed information including invoice dates, policy number, premium charged, payments credited, and balance due. *Id. See also, Tomasic and Kieval, Sworn Account and Summary Judgment Proceedings: A Proposed Change,* 17 S.Tex.L.J. 147, 159 (1975). Even if one were to assume, for the sake of argument, that Wausau did not have to prove the contents of express contracts, but rather was entitled to rely on the charges as shown in its open account (Plaintiff's Exhibit 7), its account was totally lacking in probative value, as we have previously pointed out. We hold that while Wausau proved sale and delivery of the insurance policies in question, it failed to prove the second element: that the premiums charged and the amounts shown as due and owing on Plaintiff's Exhibit 7 were in accord with the express contracts of insurance.

We sustain Bluebonnet's "no evidence" points as to proof of a vital fact: the amount due and owing Wausau by Bluebonnet.

Reversed and rendered.

ROBERTSON, Justice, dissenting.

The extended discussion in the majority opinion of the requirement for filing a motion for new trial has nothing to do with this appeal. The issue before us is simply whether appellant has preserved for appellate review his sufficiency of the evidence contention. In the final analysis, the majority opinion holds that an objection made during trial to the admissibility of evidence is a sufficient predicate for appellate review of the legal sufficiency of the evidence to render judgment. I disagree and, therefore, respectfully dissent.

There is no question that the record in this appeal is poorly developed and extremely deficient. However, it is still our duty to apply the applicable law *to the record* as we receive it. If we do this, I believe the judgment would be affirmed.

In points of error one through four, appellant attempts to bring before this court questions concerning the legal and factual sufficiency of the evidence regarding: (1) the standard premiums, (2) incurred losses, (3) terms of policies not introduced in evidence concerning the method of calculating premiums due, and (4) additional premiums due on the policies not introduced in evidence. Each of these points of error asserts the *"trial court erred in rendering judgment"* based upon the contention there was "no evidence" or "insufficient evidence" in each area about which complaint is made. In *Chemical Cleaning Inc. v. Chemical Cleaning and Equipment Service, Inc.,* 462 S.W.2d 276 (Tex.1970), the Supreme Court made it abundantly clear that a point of error asserting "the trial court erred in rendering judgment"—if adequate for any purpose—was sufficient to raise *only* a no evidence point. Although *Chemical Cleaning Inc.* was a trial before a jury, this rule has been applied to non-jury cases. *Chrysler Corporation v. Schuenemann,* 618 S.W.2d 799 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.); *Chumley v. Hall,* 601 S.W.2d 803 (Tex.Civ.App.—Dallas 1980, no writ); *Shaw's D.B. & L., Inc. v. Fletcher,* 580 S.W.2d 91 (Tex.Civ.App.— Houston [1st Dist.] 1979, no writ). The majority dismisses the precedential effect of *Chemical Cleaning* and the decisions applying it to the non-jury trials by citing its age and declaring the spirit of the present day procedural rules dictate a different result. I have found no Texas Supreme Court decision overruling or limiting *Chemical Cleaning* in the manner the majority

has. Therefore, I believe in its continued viability and believe we are precluded from considering appellant's challenge to the factual sufficiency of the evidence. The question remains whether we are precluded from considering appellant's challenge to the legal sufficiency of the evidence.

Justice Calvert in his article, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Texas L.Rev. 361 (1960), points out:

> The controlling consideration with an appellate court in passing on a point of error directed at the state of the evidence is not whether the point uses the preferable, or even the proper, terminology, *but is whether the point is based upon and related to a particular procedural step in the trial and appellate process and is a proper predicate for the relief sought.* (Emphasis added).

And, he points out that a "no evidence" point must be based upon any one of several procedural steps in the trial court—the purpose of which is to point out clearly the contentions complained of to the trial court in time for it to correct any error. *Rosas v. Shafer,* 415 S.W.2d 889 (Tex.1967). The basis for this rule is that fundamental error in civil cases survives today only in those rare instances in which the record shows the court lacked jurisdiction or that the public interest is directly and adversely affected as that interest is declared in the statutes or the Constitution of Texas. *Pirtle v. Gregory,* 629 S.W.2d 919 (Tex.1982).

In order to preserve error on appeal there must be a showing that the matter was called to the attention of the trial court and a ruling was secured thereon. *City of Austin v. Daniels,* 160 Tex. 628, 335 S.W.2d 753 (Tex.1960). According to this record, the points about which appellant now complains were raised for the first time in its brief to this court. Appellant did not ask for nor file a motion for judgment at the close of the evidence thereby calling the question of the legal sufficiency of the evidence to the attention of the trial court. Of course, a motion for judgment in a non-jury case is the legal equivalent of a motion for in-

structed verdict in a trial before the jury. *Gibraltar Savings Association v. Watson,* 624 S.W.2d 650 (Tex.App.—Houston [14th Dist.] 1981, no writ). While a motion for new trial is not mandatory to preserve the question of the legal sufficiency of the evidence, if that question has not otherwise been brought to the attention of the trial court and therefore preserved, the Supreme Court has, without any question, authorized this procedure for preservation of the error. *See Rosas,* 415 S.W.2d at 889-890. (The majority apparently believes this case only involves the requisite of filing a motion for new trial to preserve a legal insufficiency point. I do not believe this to be the situation. The procedural issue involved here is whether the record reflects such an issue was brought to the trial court's attention). Here, appellant never brought to the attention of the trial court his contention there was no evidence to support a judgment for appellee nor did he file a motion for new trial pursuant to *Rosas.* The questions were therefore not preserved for our review. *Daniels,* 335 S.W.2d at 759. I believe the recent decision of the Texas Supreme Court in *Greater Fort Worth and Tarrant County Community Action Agency v. Mims,* 627 S.W.2d 149 (Tex.1982) is applicable to the question before us. There, in holding that failure to present the issue of standing to the trial court waived the issue, the court said:

> A point not raised by pleadings, on motions for new trial, or otherwise presented to the trial court may not be raised on appeal. Rule 324, Tex.R.Civ.Pro. This issue was not raised by the pleadings; it was not mentioned in CAA's [appellant's] motion for new trial or its amended motion for new trial, and there is nothing in the record to indicate that it was ever brought to the attention of the trial court; therefore the point was waived by CAA.

*Id.* at 151. If failure to bring the standing issue to the trial court's attention resulted in its waiver for appeal, then why would not the same principle be applied where a no evidence point assailing the judgment was never brought to the attention of the

trial court? Logically, it should, and I would so hold. As a result, we are precluded from passing upon appellant's points contesting the legal sufficiency of the evidence.

However, the majority fails to recognize the absence of an appellate predicate in this record. Without citing any authority whatsoever, it judicially construes an objection to the *admission* of evidence during trial as a predicate to preserve a point of error asserting there is *no evidence to render* judgment. The majority also appears to equate an assignment of error complaining of the legal or factual sufficiency of the evidence to sustain trial court findings of fact with an assignment of error that the trial court "erred in rendering judgment" because of the state of the evidence. Ironically, appellant apparently recognizes the distinction because, unlike the first four points of error attacking the *judgment,* its fifth point of error attacks a *finding of fact* made by the trial court. I, too, believe there is a difference and would so hold.

The majority's reliance upon *Kissman v. Bendix Home Systems,* 587 S.W.2d 675 (Tex.1979) and *Brown v. Brown,* 590 S.W.2d 808 (Tex.Civ.App.—Eastland 1979, no writ), is, I believe, misplaced. In each of those cases the attack was upon a finding of fact. Unlike the majority I cannot rely upon *Conrad v. Artha Garza Co.,* 615 S.W.2d 238 (Tex.Civ.App.—Dallas 1981, no writ) for the broad proposition that it dispenses with the requirement of an appellate predicate for assertions of legally insufficient evidence points on appeal. I believe the majority's reasoning in its opinion to be unsound because it permits an attack on the *judgment* for the first time on appeal. This equates to fundamental error.

As stated by Justice Calvert in the opening paragraph of his article, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 Texas L.Rev. 361 (1960):

It was thought that the per curiam opinion of the Supreme Court in *In re King's Estate* [150 Tex. 662, 244 S.W.2d 660 (1951)] and the publication of former Associate Justice Garwood's excellent arti-

cle, *The Question of Insufficient Evidence on Appeal,* would resolve, both for lawyers and judges of Courts of Civil Appeals, most of the problems growing out of points of error challenging a verdict or judgment because of a lack of evidence or lack of sufficient evidence to support it, or because it is contrary to the great weight and preponderance of the evidence; but a growing number of recent decisions indicate a continuing misunderstanding in some quarters of the nature and office of points of error of that type, justifying, it seems to the writer, a somewhat more analytical discussion of the subject.

I acknowledge there may be conflict with a decision by the El Paso Court of Appeals on the issue before us. *See Page v. Pete,* 624 S.W.2d 674 (Tex.App.—El Paso 1981, writ ref'd n.r.e.). However, even today Justice Calvert's article is being approvingly cited in Texas Supreme Court decisions and it is for that reason I believe in its viability. *See, e.g., Trenholm v. Ratcliff,* 646 S.W.2d 927 (Tex.1983). I can find no logical basis for not applying its reasoning to the record before us and would accordingly overrule appellant's first four points of error.

I respectfully dissent.