Timothy Daniel REGAN, Appellant,

v.

Mary LEE, Appellee.

No. A14–93–00595–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

May 5, 1994.

**134**

Warren Cole, Houston, for appellant.

Michael B. Lee, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and MURPHY and ELLIS, JJ.

## OPINION

PER CURIAM.

Appellant, Timothy Daniel Regan, appeals the trial court's judgment in favor of appellee, Mary Lee, for intentional infliction of emotional distress. We reverse and render.

On July 27, 1991, appellee was driving her automobile on Memorial Drive in Houston with her two pre-teenage children. She attempted to make a right hand turn onto Mott Lane but was prevented from doing so by a truck that was blocking her path. Appellant was driving his jeep directly behind appellee and had two female passengers. Appellant began honking at appellee at which time appellee rolled down her window and told him, "If you think you can do a better job, please be my guest." Appellant responded, "Hey b----, why don't you come suck my d---."

Eventually, appellant was able to drive his vehicle around appellee's and left the scene. Appellee then followed appellant for approximately 15 miles until he pulled into a cul-de-sac and she parked her car in front of his, preventing him from leaving. At that point, appellee exited her vehicle and asked appellant what his problem was. Appellant replied, "F--- you b----. I don't have to answer your questions. I don't have to answer anything you say." Appellee then tried to reach into appellant's vehicle to get his car keys, but was unsuccessful.

Subsequent to the incident, appellant attempted to apologize by phone, but appellee would not accept his apology. Appellant, through a mutual friend, attempted to set up a meeting with appellee to resolve the incident, but appellee cancelled the meeting. Appellee admitted that appellant had nothing to do with obstructing or cancelling this meeting.

Appellee sued appellant for damages. At the bench trial, she testified as to her distress as a result of the incident:

[APPELLEE]: Depression. Listening to a then 11–year–old and 13–year–old wonder what we did wrong to have some nice-looking boy speak to me in that manner. Upset me to the point where I was unable to answer that question in their minds, but think what is this world coming to when all you're doing is making a simple right-hand turn onto your own street with your children and because somebody else cannot control their language would affront you like that. I almost felt like I had been raped.

[COUNSEL]: Candidly speaking, did it make you mad?

[APPELLEE]: Very mad. Very angry.

[COUNSEL]: Did it in your judgment and in your mind humiliate you?

[APPELLEE]: Yes. Oh, very much so. Especially in front of my children.

[COUNSEL]: Mrs. Lee, is this a matter of principle?

[APPELLEE]: Yes, sir, it is.

On cross examination, appellee testified that she did not seek assistance from a mental health professional as a result of the distress caused by this incident and there was no evidence that she suffered any pecuniary loss. Appellee testified that her damages were $5,000. When asked on cross-examination where the $5,000 in damages came from, appellee answered, "No pencil and paper to it. Just a number. It could have been a lot higher." In addition, when asked why the court should consider compensating her $5,000, the substance of her response was because appellant "has not shown any remorse nor has there been a real consequence to his actions." She also explained that the damages "might get his attention" and that "later on down in his life that before he opens his mouth and before he would allow someone to speak his own mother or sister that way, that he's going to think twice about looking at a woman with her children in the car and saying what he did to me." After a bench trial, the court found in favor of appellee and awarded her $2,500 in damages.

Appellant asserts six points of error. First, the trial court erred in finding that appellant verbally assaulted appellee without provocation because the evidence is legally insufficient, and in the alternative, factually insufficient to support the finding. Second, the trial court erred in concluding that appellant's action in verbally accosting appellee constituted extreme and outrageous conduct because liability does not extend to mere insults and indignities. Third, the trial court erred in concluding that appellant's actions constituted extreme and outrageous conduct because the evidence is legally insufficient, and in the alternative, factually insufficient, to support the conclusion. Fourth, the trial court erred in finding that appellee suffered severe emotional distress because the evidence is legally insufficient, and alternatively, factually insufficient to support the findings of severe emotional distress and the conclusion that the element of severe emotional distress had been established. Fifth, the

trial court erred in concluding that the damage award of $2,500 was not excessive because the evidence is legally insufficient, and in the alternative, factually insufficient, to support a damage award. Sixth, the trial court erred in concluding that appellant's actions constituted extreme and outrageous conduct as a matter of fact and law because allowing recovery for a wrong that has no basis violates public policy.

The majority of appellant's points of error concern the legal and factual insufficiency of issues on which he did not have the burden of proof. The legal insufficiency questions are, in effect, "no evidence" points of error, upon which we can render judgment. Therefore, the question becomes whether a predicate was required to preserve error on these points, and if so, whether appellant properly laid that predicate.

In the history of Texas law, to raise a "no evidence" point before an appellate court after a *jury* trial, the appellant must have filed one or more predicate motions designed to bring the error to the trial judge's attention, enabling the judge to correct the error and render judgment for the movant before jurisdiction was lost. *Bluebonnet Exp. v. Employers Ins. of Wausau*, 651 S.W.2d 345, 351–52 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.). These predicate motions include: (1) a motion for instructed verdict; (2) a motion for judgment notwithstanding the verdict; (3) an objection to the submission of the issue to the jury; (4) a motion to disregard the jury's answer to a vital fact issue; or (5) a motion for new trial specifically raising the complaint. *Aero Energy, Inc. v. Circle C Drilling Co.*, 699 S.W.2d 821, 822 (Tex.1985). However, no such predicate motion requirements have been imposed on appeals from *nonjury* trials and it has been possible to raise both legal and factual sufficiency of the evidence points for the first time on appeal as long as the complaint has somehow been brought to the trial judge's attention. *Bluebonnet Exp.*, 651 S.W.2d at 352 (citing, *Kissman v. Bendix Home Systems*, 587 S.W.2d 675, 677–78 (Tex.1979)).

Furthermore, Tex.R.App.P. 52(a) requires a party to present to the trial court a timely request, objection or motion in order to pre-

serve appellate review. The rule was amended in 1990 to clarify appellate requisites from nonjury trials. The amended portion of Rule 52(d) reads as follows:

A party desiring to complain on appeal in a nonjury case that the evidence was legally or factually insufficient to support a finding of fact, that a finding of fact was established as a matter of law or was against the overwhelming weight of the evidence, or of the inadequacy or excessiveness of the damages found by the court shall not be required to comply with paragraph (a) of this rule.

■ In other words, challenges to a finding of fact's legal and factual sufficiency can be made for the first time on appeal from nonjury trials. *Westech Eng. v. Clearwater Constructors*, 835 S.W.2d 190, 196–97 (Tex. App.—Austin 1992, no writ). Therefore, no predicate was required for appellant to challenge the legal and factual insufficiency of findings of fact on appeal. However, the general rule pursuant to Rule 52(a) still applies to challenges to conclusions of law from nonjury trials. *See* TEX.R.APP.P. 52(d); *Winters v. Arm Refining Co., Inc.*, 830 S.W.2d 737, 738 (Tex.App.—Corpus Christi 1992, writ denied). Appellant did make requests for conclusions of law sufficient to preserve appellate review of his points challenging the trial court's conclusions of law. Therefore, each of appellant's points of error have been preserved for appellate review.

■ In reviewing "no evidence" points, we must consider only the evidence and inferences that tend to support the finding, and disregard all evidence and inferences to the contrary. *Best v. Auto Ryan Group, Inc.*, 786 S.W.2d 670, 671 (Tex.1990). In reviewing a factual insufficiency of the evidence challenge, we must first consider, weigh, and examine all of the evidence which supports and which is contrary to the fact finder's determination. *See Plas–Tex, Inc. v. United States Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). Since appellant's points of error involve both legal and factual sufficiency challenges, we will review the evidence under both standards.

■ The Texas Supreme Court has recognized the tort of intentional infliction of emotional distress and has adopted Restatement (Second) of Torts § 46. *Twyman v. Twyman*, 855 S.W.2d 619, 621–22 (Tex.1993). The Restatement elements of intentional infliction of emotional distress are: 1) the defendant acted intentionally or recklessly; 2) the conduct was extreme and outrageous; 3) the actions of the defendant caused the plaintiff emotional distress; and 4) the emotional distress suffered by the plaintiff was severe. Restatement (Second) of Torts § 46 (1965); *Twyman*, 855 S.W.2d at 621.

■ In appellant's fourth point of error, he contends that the trial court erred in finding and concluding that appellee suffered severe emotional distress. As to this element of the tort, the Restatement explains that "[t]he law intervenes only when the distress inflicted is so severe that no reasonable [person] could be expected to endure it." Restatement (Second) of Torts § 46, cmt. j; *see also Benavides v. Moore*, 848 S.W.2d 190, 195 (Tex.App.—Corpus Christi 1992, writ denied). To recover damages, a person must prove more than mere worry, anxiety, vexation, embarrassment or anger. *Haryanto v. Saeed*, 860 S.W.2d 913, 923 (Tex.App.—Houston [14th Dist.] 1993, writ denied).

As stated previously, appellee testified that she was "[v]ery angry," humiliated, and suffered from depression as a result of the incident because she could not explain to her children why appellant spoke to her in the manner that he did. She did not seek professional help, nor is there any evidence of pecuniary loss. *See Benavides*, 848 S.W.2d at 196 (holding that plaintiff's admission that she had not consulted a mental health professional and did not intend to indicated that her distress did not rise to the level that a reasonable person could not be expected to endure). Appellee offered no evidence of the severity of her depression or humiliation, nor did she demonstrate how the distress was unendurable. *See Haryanto*, 860 S.W.2d at 917 (finding severe emotional distress where plaintiff was diagnosed with post-traumatic stress disorder, had difficulty sleeping, and lived in fear of his life); *American Medical Intern. v. Giurintano*, 821 S.W.2d 331, 342–

43 (Tex.App.—Houston [14th Dist.] 1991, no writ) (upholding a finding of severe emotional distress where plaintiff testified that he had lost his job and his home and wondered whether life was worth living and where others testified that he looked older, grayer, and thinner than before).

Furthermore, this tort is designed to compensate those whose emotions have suffered extreme harm. On the contrary, it is apparent from appellee's testimony, as set out above, that her primary purpose in bringing this suit was not to be compensated for her emotional distress, but to punish appellant so that there would be "a real consequence to his actions." We hold that the evidence is legally insufficient to support a finding of severe emotional distress and sustain appellant's fourth point of error.

Because of our disposition of the case under point of error four, appellant's first through third, fifth, and sixth points of error need not be addressed.

Accordingly, the judgment of the trial court is reversed and judgment is rendered in favor of appellant and that appellee take nothing.

ELLIS, Justice, dissenting.

Finding myself in disagreement with the majority members of the panel, I respectfully file my dissent. I would affirm the judgment of the trial court.

The majority correctly states that Texas has recognized the tort of intentional infliction of emotional distress and has adopted Restatement (Second) of Torts § 46(1). *Twyman v. Twyman,* 855 S.W.2d 619, 621–22 (Tex.1993). The Restatement elements of intentional infliction of emotional distress are: 1) the defendant acted intentionally or recklessly; 2) the conduct was extreme and outrageous; 3) the actions of the defendant caused the plaintiff emotional distress; and 4) the emotional distress suffered by the plaintiff was severe. Restatement (Second) of Torts § 46 (1965); *Twyman,* 855 S.W.2d at 621.

I disagree with the majority in that I would hold that appellant's conduct was the type required by the tort of intentional inflic-tions of emotional distress. In my opinion his conduct showed that he acted intentionally or recklessly and his actions were extreme and outrageous and there is legally sufficient evidence proving that his conduct caused appellee severe emotional distress. I would affirm the trial court's judgment.